**FILED**

OCT 2 3 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

DAVID CREWS, CLERK
BY_____
Deputy

UNITED STATES OF AMERICA

**FILED UNDER SEAL**

VS.

CRIM. NO. 4:14CR/4/

FRANK GEORGE OWENS, JR.
a/k/a "State Raised"
PERRY WAYNE MASK
STEPHEN NEAL HUBANKS
JOSEPH BRANDON CREEL
a/k/a "Oak"
SONNY TODD MAXWELL
a/k/a "Blue"
JAMES MILTON DEAN
a/k/a "JD"
WALTER BURRUS
a/k/a "T-bone"
RICKY WAYNE JENKINS
a/k/a "Scissorhands"
DAVID LADRONE WILLIS
a/k/a "Leprechaun"
KATHY JUNE SHADBURN
NATASHA BAXTER ELLIS
a/k/a "Tasha"
RUTHIE GAIL RUTLEDGE
a/k/a "Goldmine"
GARY BRIAN LEE
WILLIAM ELLIS OVERTON

18 U.S.C. § 1962(d)
21 U.S.C. § 846
18 U.S.C. § 1959(a)(1)
18 U.S.C. § 1959(a)(3)
18 U.S.C. § 1959(a)(5)
18 U.S.C. § 922(u)
18 U.S.C. § 922(j)
18 U.S.C. § 924
18 U.S.C. § 2

Defendants.

THE GRAND JURY CHARGES:

## COUNT ONE
(Conspiracy to Participate in Racketeering Activity)

### Introduction

1.    At various times relevant to this Indictment, the defendants and others, known and

unknown, were members of the Aryan Brotherhood of Mississippi (hereinafter the "ABM"), a

1

criminal organization whose members and associates engaged in narcotics distribution, firearms trafficking, money laundering, and acts of violence involving murder, attempted murder, assault, and kidnapping, and which operated throughout Mississippi, including the Northern District of Mississippi and elsewhere.

## Structure and Operation of the Enterprise

2.     The structure of the ABM included, but was not limited to, the following:

a.     The ABM was a violent, race-based, "whites only" prison-based gang with hundreds of members operating inside and outside of state penal institutions throughout Mississippi. The ABM offered protection to white inmates if they joined the gang.

b.     The ABM was established in approximately 1984 within the Mississippi Department of Corrections (MDOC), where the traditional power centers of the ABM and members of the gang's leadership structure resided. Recently, the ABM's structure and influence expanded to rural and suburban areas throughout Mississippi. The ABM modeled itself after and adopted many of the precepts and writings of the Aryan Brotherhood, a California-based prison gang that was formed in the California prison system during the 1960's. In early 2013, the ABM pursued unification with the Aryan Brotherhood of California in order to achieve national recognition.

c.     The ABM had a detailed and uniform organizational structure, which is outlined - along with various rules, procedures, and code of conduct - in a written "constitution" widely distributed to members throughout Mississippi and elsewhere.

d.     The ABM had a defined militaristic structure. ABM members referred to the gang as the "Family." The ABM is overseen and directed by a three-member "Wheel," commonly referred to as "Spokes." The Wheel had ultimate authority in all gang matters.

2

Subordinate ranking members served to support the Wheel to enforce gang members' discipline and adherence to established ABM rules and laws. "State Captains" were appointed by the Wheel. One State Captain was appointed to direct gang activity inside MDOC, while a companion State Captain was appointed to direct gang activity in the "free world," outside of the prison system. They worked together to carry out all Wheel directives and resolve issues under their authority. The ABM divided the state of Mississippi into three separate geographic areas, commonly referred to as North, Central and South. Each area had an assigned Captain. Areas were further separated into zones commonly referred to as East, Central and Western. Each zone also maintained a Captain in the free world. Further, each prison facility with an ABM presence had a facility Captain. In addition to the Captains, each area zone and facility could include two "Lieutenants," a "Sergeant-at-Arms," a "Treasurer" and numerous "Soldiers." The Lieutenants assisted the Captain with carrying out orders from the Wheel and delegated responsibilities to ABM members. The Sergeant-at-Arms was responsible for maintaining order and discipline. Sergeants-at-Arms could appoint two "brothers" to help investigate violations of gang rules and mete out punishment. The Treasurer position was occupied by a State Treasurer, who was responsible for the collection, management, and distribution of ABM money throughout Mississippi. The State Treasurer was assisted by area Treasurers in the free world and Treasurers imprisoned within Mississippi's prison facilities. The ABM's ranking structure remained constant, although personnel changes (promotions, demotions, terminations) occurred frequently. Wheel members typically remained in place, unless they retired due to health, in which case the two remaining Wheel members would select a replacement.

      e.      ABM Wheel leaders had the authority within the gang to issue "D.O.'s"

3

(direct orders) and mete out punishment. A D.O. was an assignment given to a subordinate ABM member that would serve a purpose for the ABM. The D.O. could range from a leader ordering a "violation," classified as "minor, serious, or major," an "S.O.S." (smash on sight), meaning the assault of an ABM member who had committed a violation of the ABM rules which usually resulted in the removal of that member's ABM "brand" (gang tattoo) and membership, to a "K.O.S." (kill on sight), meaning the murder of a rival gang member or of an ABM member or associate who had committed an egregious violation of the gang's rules. Failure to perform a D.O. resulted in the assigned member being in violation of the rules. Punishment for failing to complete the D.O. could range anywhere from a fine, written violation, beating, or death.

   f. Members of the ABM greeted each other and showed their membership in the gang using a handshake intended to represent the phrase: "From Man to Man, From Brother to Brother, Together in Battle, For the Cause." The ABM employed a robust symbology as well, using depictions of Nazi-style inspired symbols and artwork to demonstrate their affiliation. Members often had tattoos incorporating one or more Nazi-style symbols as well as State-specific symbols including, but not limited to, the Iron Cross, eternal flame, "13" (for "M" the 13th letter in the alphabet), swastika, and Schutzstaffel ("SS") lightning bolts. The most coveted tattoo of the ABM membership was the ABM patch, which could be worn only by fully made members who generally ascended to full membership by committing a "blood-in mission" (aggravated assault or murder) on behalf of the gang. The design and shape of the patch evolved over time. ABM's most recent design was modeled after the patch worn by the Aryan Brotherhood of California. It consisted of a shield adorned with a sword and battle axe, encompassing a swastika, lightning bolts, an Iron Cross – with "A" and "B" and "Sinn Fein" over the top of the shield – and "Mississippi" under the bottom of the shield. Phrases unique to

4

the ABM lexicon included "Sinn Fein Mein Felagus," "we ourselves alone," the ABM Creed
"Brothers Before Others" and the ABM Aryan Warrior Motto: "Where Aryan boots tread there
will be Respect or Bloodshed!" The colors associated with the ABM were blue, blue and red
combined, gold and silver, and black. Blue, the most dominant color, represented "blue blood"
of the upper class society of Aryan Brotherhood. The blue and red combination represented the
gang's "battle colors." Gold and silver represented the gang's beliefs, actions and goal to
establish one supreme (Aryan) nation. Black represented the uniform colors of the Aryan
warrior.

    g.  Once released from incarceration, ABM members were required to remain
loyal to the ABM and were required to immediately report to outside leaders to further the goals
of the ABM through criminal activity. They were required to attend "church" meetings, which
were meetings held to discuss and conduct ABM gang business. One of the goals of the ABM
was to recruit new members. ABM members were recruited from both inside and outside state
penal institutions. In order to be considered for ABM membership, a person had to be sponsored
by another ABM member. Once sponsored, a prospective member had to serve a "pre-prospect"
term usually of not less than six months, during which he was referred to as a prospect, and his
conduct was observed by other gang members. During this period, the prospect was required to
study and learn the ABM constitution and by-laws. The prospect was also required to sign a
"Prospect Compact" document, and make an "oath of secrecy," and a life-long commitment to
the ABM. During the prospect period, the individual was considered part of the ABM family
and entitled to the full protection of the gang. The prospect was also subject to the rules and
orders of the gang. If the prospect's conduct during the probationary period was deemed
satisfactory, his membership to the gang was submitted to the gang members. The vote had to be

unanimous to be admitted to the ABM. The prospect could be "black-balled" by a single member of the gang, and refused admission to the ABM. All ABM members were required to attend monthly "church" meetings where criminal activity was discussed, financial proceeds from criminal activity were collected including, but not limited to, collection of drug proceeds from subordinate gang members for senior ABM gang leaders, and disciplinary beatings of fellow ABM gang members were administered.

          h.     In addition to members, the enterprise included those closely affiliated with the ABM, who were called "associates." Wives or girlfriends of ABM members were often associates and could join the gang as "featherwoods" so long as they complied with the gang's rules and served to promote the goals of the "family." Associates and featherwoods functioned as communications hubs, facilitating gang communications and criminal activities among imprisoned members throughout the penal system through the use of the telephone, the internet, the United States Mail and common carriers. Featherwoods and associates also smuggled drugs, cellular telephones and other items of contraband to imprisoned gang members.

## The Racketeering Enterprise

3.     The ABM, including its leaders, members, and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members and associates, including its prospects, functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

6

### The Defendants

4.    At various times relevant to this Indictment, the following individuals, among others, were members or associates of the ABM in the various capacities set forth below:

a.    **FRANK GEORGE OWENS JR., a/k/a "State Raised," PERRY WAYNE MASK, STEPHEN NEAL HUBANKS,** and **JOSEPH BRANDON CREEL, a/k/a "Oak,"** each held a leadership rank of "Wheel" of the ABM enterprise, and directed other members and associates of the enterprise in carrying out unlawful activities and other acts in furtherance of the conduct of the enterprise's affairs. As leaders, **FRANK GEORGE OWENS JR., a/k/a "State Raised," PERRY WAYNE MASK, STEPHEN NEAL HUBANKS,** and **JOSEPH BRANDON CREEL, a/k/a "Oak,"** were responsible for, among other things, supervising the criminal activities of the members and associates of the ABM enterprise; issuing K.O.S. or S.O.S. orders to assault or kill rival gang members and subordinate gang members whom they believed had violated ABM rules of conduct; and presiding over ABM "church". In addition, apart from supervising and directing the criminal activities of the members and associates of the ABM enterprise, **FRANK GEORGE OWENS JR., a/k/a "State Raised," PERRY WAYNE MASK, STEPHEN NEAL HUBANKS,** and **JOSEPH BRANDON CREEL, a/k/a "Oak,"** also participated directly in the criminal activities of the ABM enterprise. Among their criminal activities were murder, attempted murder, kidnapping, assault, money laundering, drug distribution, and firearms trafficking.

b.    **JAMES MILTON DEAN, a/k/a "JD,"** and **DAVID LADRONE WILLIS, a/k/a "Leprechaun,"** each held a leadership rank of State Captain, Captain, Lieutenant, or Recruiter of the ABM enterprise and directed subordinate members and associates of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the

7

enterprise's affairs. As high-ranking ABM gang members, **JAMES MILTON DEAN, a/k/a "JD,"** and **DAVID LADRONE WILLIS, a/k/a "Leprechaun,"** were responsible for, among other things, supervising the criminal activities of subordinate members and associates of the ABM enterprise; carrying out issued K.O.S. and S.O.S. orders to kill rival gang members and subordinate gang members and associates whom they believed had violated ABM rules of conduct or acted inconsistent with ABM instructions; and presiding over ABM "church" meetings. In addition, apart from supervising and directing the criminal activities of the members and associates of the ABM enterprise, **JAMES MILTON DEAN, a/k/a "JD,"** and **DAVID LADRONE WILLIS, a/k/a "Leprechaun,"** also participated directly in the criminal activities of the ABM enterprise. Among their criminal activities were murder, attempted murder, kidnapping, assault, drug distribution, and firearms trafficking.

      c.    **SONNY TODD MAXWELL, a/k/a "Blue," WALTER THOMAS BURRUS a/k/a "T-bone,"** and **RICKY WAYNE JENKINS, a/k/a "Scissorhands,"** each held a rank of "Soldier" and/or "Brother" in the ABM enterprise, and were responsible for, among other things, carrying out murder, attempted murder, kidnapping, assault, and physical "disciplines" at the direction of senior ABM gang leaders. In addition, **SONNY TODD MAXWELL, a/k/a "Blue," WALTER THOMAS BURRUS a/k/a "T-bone,"** and **RICKY WAYNE JENKINS, a/k/a "Scissorhands,"** also participated directly in other criminal activities of the ABM enterprise including, but not limited to, murder, attempted murder, kidnapping, assault, drug distribution, and firearms trafficking.

      d.    **KATHY JUNE SHADBURN, NATASHA BAXTER ELLIS, a/k/a "Tasha,"** and **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** each were featherwoods or associates of the ABM gang. In such capacity, they, among other things, facilitated communication of

criminal activities in furtherance of the conduct of the enterprise's affairs among imprisoned

ABM gang members throughout the Mississippi state penal system, through the use of the

telephone, the internet, the United States mail, and common carriers. **KATHY JUNE**

**SHADBURN** and **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** also managed financial

transactions connected to criminal activity of senior leaders of the ABM including purchases of

drugs and contraband cell phones for use by imprisoned ABM gang members.

## Purposes of the Enterprise

5.      The purposes of the enterprise included, but was not limited to, the following:

    a.      Enriching the leaders, members, and associates of the enterprise through

among other things, the illegal trafficking of controlled substances and firearms.

    b.      Preserving and protecting the power, territory, operations, and proceeds of

the enterprise through the use of threats, intimidation, violence, and destruction, including, but

not limited to, acts of murder, attempted murder, assault with a dangerous weapon, obstruction

of justice, and other acts of violence.

    c.      Promoting and enhancing the enterprise and its members' and associates'

activities.

    d.      Keeping victims in fear of the enterprise and in fear of its leaders,

members, and associates through threats of violence and actual violence. The leaders, members,

and associates of the enterprise undertook all steps necessary to prevent the detection of their

criminal activities and sought to prevent and resolve the imposition of any criminal liabilities

upon their leaders, members, and associates, by the use of murder, violence, and intimidation

directed against witnesses, victims, and others.

e.     Providing support to gang members who were charged with or
incarcerated for gang-related activities.

f.     Preserving and protecting the financial proceeds of the enterprise by
money laundering funds through prepaid bank, debit and credit cards.

## Manner and Means of the Conspiracy

6.     The defendants agreed to participate in a scheme that included the operation and
management of the enterprise. Members and associates of the enterprise operated and conducted
their affairs through a series of rules and policies, some of which were codified in a constitution
and by-laws of the gang.

a.     The members and associates of the enterprise attended regular meetings,
referred to as "church," where criminal activity was discussed, financial proceeds from criminal
activity were collected including, but not limited to, collection of drug proceeds from
subordinate gang members for senior ABM gang leaders, and disciplinary beatings of fellow
ABM gang members were administered.

b.     To enforce discipline and the rules of the enterprise, members and
associates of the enterprise engaged in a system of "violations," in which the defendants and
others committed murder, attempted murder, conspired to murder, physically assaulted, and
threatened those members and associates of the enterprise who violated rules, questioned
authority, or posed a threat to the leaders, members, or purposes of the enterprise.

c.     Members and associates of the enterprise knowingly and intentionally
conspired to distribute and possessed with the intent to distribute 500 grams or more of a mixture
or substance containing a detectable amount of methamphetamine and 50 grams or more of
methamphetamine (actual), in violation of Title 21, United States Code, Sections 841 and 846.

    d.    Members and associates of the enterprise committed kidnapping without lawful authority, by forcibly seizing and confining a person, or inveigling or kidnapping a person with intent to cause such person to be confined or imprisoned against his or her will, in violation of Mississippi Code Annotated Section 97-3-53.

    e.    Members and associates of the enterprise committed murder by killing a human being without the authority of law and 1) with deliberate design to effect the death of the person killed, in violation of Mississippi Code Annotated Section 97-3-19(1)(a); 2) by killing a human being while engaging in an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of the person killed, in violation of Mississippi Code Annotated Section 97-3-19(1)(b); and 3) by killing a human being, with or without any design to effect death, while engaged in the commission of the crime of kidnapping, in violation of Mississippi Code Annotated Section 97-3-19(2)(e).

    f.    Members and associates of the enterprise employed and used gang-related terminology, symbols, phrases, and gestures.

    g.    To perpetuate the enterprise and to maintain and extend their power, members and associates of the enterprise committed and conspired to commit acts including murder, attempted murder, intimidation, and assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members, ABM gang members, and witnesses to illegal activities of the enterprise.

    h.    Members and associates of the enterprise managed the procurement, transfer, use, concealment, barter, distribution and disposal of firearms and dangerous weapons within the enterprise to protect gang-related criminal activities, personnel, and operations to

11

deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons, and to raise money or obtain narcotics for the enterprise.

      i.     Members and associates of the enterprise regularly financed their activities through funds obtained in the illegal trafficking of controlled substances, including, but not limited to, the distribution and possession with the intent to distribute Suboxone, a Schedule III controlled substance, and methamphetamine.

      j.     Members and associates of the enterprise hid, misrepresented, concealed, and caused to be hidden, misrepresented, and concealed, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means of communication to avoid detection and apprehension by law enforcement authorities.

## The Racketeering Conspiracy

      7.     Beginning on a date unknown to the Grand Jury, but at least as of in or about 2009, and continuing through on or about the date of this Indictment, in the Northern District of Mississippi, and elsewhere, the defendants **FRANK GEORGE OWENS JR., a/k/a "State Raised," PERRY WAYNE MASK, STEPHEN NEAL HUBANKS, JOSEPH BRANDON CREEL, a/k/a "Oak," SONNY TODD MAXWELL, a/k/a "Blue," JAMES MILTON DEAN, a/k/a "JD," WALTER THOMAS BURRUS, a/k/a "T-bone," RICKY JENKINS, a/k/a "Scissorhands," DAVID LADRONE WILLIS, a/k/a "Leprechaun," KATHY JUNE SHADBURN, NATASHA BAXTER ELLIS, a/k/a "Tasha,"** and **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** being persons employed by and associated with the ABM, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise

12

through a pattern of racketeering activity, as defined in Sections 1961 (1) and (5) of Title 18, United States Code, involving:

>    a. multiple acts involving narcotics trafficking, in violation of Sections 841(a)(1) (distribution and possession with the intent to distribute a controlled substance) and 846 (conspiracy to distribute and possession with the intent to distribute a controlled substance) of Title 21, United States Code;
>
>    b. multiple acts indictable under Title 18, United States Code, Section 1956 (laundering of monetary instruments);

and multiple acts involving:

>    c. murder, in violation of Mississippi Code Annotated, Sections 97-3-19(1)(a)-(b) and (2)(c), 97-1-1, 97-1-7(2), and 97-1-3; and,
>
>    d. kidnapping, in violation of Mississippi Code Annotated, Section 97-3-53, 97-1-1, 97-1-7(1), and 97-1-3.

It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

8.    In furtherance of the conspiracy and to achieve the objective thereof, the defendants performed or caused to be performed the following overt acts, among others, in the Northern District of Mississippi, the Southern District of Mississippi, and elsewhere.

>    a.    Beginning on a date unknown to the Grand Jury, but at least in or about January 2009, and continuing to the date of this indictment, **PERRY WAYNE MASK,**

13

**STEPHEN NEAL HUBANKS**, **JOSEPH BRANDON CREEL, a/k/a "Oak," DAVID LADRONE WILLIS, a/k/a "Leprechaun," KATHY JUNE SHADBURN, NATASHA BAXTER ELLIS, a/k/a "Tasha,"** and **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** others known and unknown to the Grand Jury, knowingly and willfully conspired to distribute and possess with the intent to distribute 500 grams or more of a mixture of substance containing a detectable amount of methamphetamine and 50 grams or more of methamphetamine (actual), in violation of Title 21, United States Code, Sections 841 and 846.

b.      Beginning on a date unknown to the Grand Jury, but at least in or about January 2009, and continuing to the date of this indictment, **PERRY WAYNE MASK, STEPHEN NEAL HUBANKS, RICKY JENKINS, a/k/a "Scissorhands," DAVID LADRONE WILLIS, a/k/a "Leprechaun," KATHY JUNE SHADBURN, RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** and others known and unknown to the Grand Jury, laundered the proceeds of ABM drug transactions utilizing prepaid bank, credit and debit cards, in violation of Title 18 U.S.C. Section 1956.

c.      From at least in or about October 2010, through on or about December 3, 2010, **FRANK GEORGE OWENS JR., a/k/a "State Raised,"** and others known and unknown to the Grand Jury, ordered a "K.O.S." (kill on sight) against a subordinate gang member whom the ABM believed had violated gang rules and failed to pay a debt owed to a fellow gang member.

d.      On or about December 2, 2010, **FRANK GEORGE OWENS JR., a/k/a "State Raised," SONNY TODD MAXWELL, a/k/a "Blue," JAMES MILTON DEAN, a/k/a "JD,"** and others known and unknown to the Grand Jury, aiding and abetting each other, lured a

14

subordinate gang member, Michael Hudson, to the residence of another ABM gang member under the guise that the gang was going to manufacture methamphetamine.

        e.     On or about December 2, 2010, **FRANK GEORGE OWENS, a/k/a "State Raised," SONNY TODD MAXWELL, a/k/a "Blue," JAMES MILTON DEAN, a/k/a "JD," WALTER THOMAS BURRUS, a/k/a "T-bone,"** and others known and unknown to the Grand Jury, aiding and abetting each other, bound, kidnapped and severely assaulted Michael Hudson, whom the ABM believed owed a drug debt to the ABM enterprise.

        f.     From on or about December 2, 2010, and continuing through December 3, 2010, **FRANK GEORGE OWENS JR., a/k/a "State Raised," SONNY TODD MAXWELL, a/k/a "Blue," JAMES MILTON DEAN, a/k/a "JD," WALTER THOMAS BURRUS, a/k/a "T-bone,"** and others known and unknown to the Grand Jury, aiding and abetting each other, murdered Michael Hudson, whom the ABM believed owed a drug debt to the ABM enterprise.

        g.     From on or about December 2, 2010 and continuing through December 8, 2010, **FRANK GEORGE OWENS JR., a/k/a "State Raised," JOSEPH BRANDON CREEL, a/k/a "Oak,"** and others known and unknown to the Grand Jury, aiding and abetting each other, burned the body of Michael Hudson, along with bloody clothing and other items used in connection with the killing.

        h.     On or about December 2, 2010, **SONNY TODD MAXWELL, a/k/a "Blue,"** earned his ABM patch for participating in killing a fellow ABM gang member.

        i.     On or about December 2, 2010, **FRANKIE GEORGE OWENS, JR., a/k/a "State Raised"** earned his "lightning bolts" and status of ABM "executioner" for killing Michael Hudson.

j.  From in or about 2011 and continuing to in or about May 2014, **PERRY WAYNE MASK** issued multiple S.O.S. orders to assault subordinate ABM gang members, whom the ABM believed had violated rules ABM gang rules.

k.  From in or about September 2011, and continuing through on or about October 8, 2011, **JOSEPH BRANDON CREEL, a/k/a "Oak,"** and others known and unknown to the Grand Jury, ordered subordinate gang members to burn the ABM brand from the chest of a fellow gang member whom the ABM believed had failed to pay a drug debt to the ABM enterprise.

l.  From in or about December 2012, through in or about August 2013, **DAVID LADRONE WILLIS a/k/a/ "Leprechaun,"** ordered and participated in the assault of numerous fellow gang members whom the ABM believed had violated gang rules.

m.  In or about 2013, **RICKY JENKINS, a/k/a "Scissorhands,"** threatened to assault another ABM gang member upon the orders of ABM gang superiors.

n.  From in or about April 2013 through in or about February 2014, **KATHY JUNE SHADBURN** collected and distributed thousands of dollars in proceeds from the sale of methamphetamine at the direction of ABM senior leaders.

o.  In or about July 2013, **NATASHA BAXTER ELLIS, a/k/a "Tasha,"** and others known and unknown to the Grand Jury, lured an ABM gang member to a secluded location where he was assaulted by fellow ABM gang members because it was believed he had violated ABM gang rules.

p.  In or about August 2013, **FRANK GEORGE OWENS JR., a/k/a "State Raised," PERRY WAYNE MASK,** and others known and unknown to the Grand Jury,

16

approved the stabbing of a subordinate ABM member whom the ABM believed had disrespected the ABM enterprise.

q.      In or about August 2013, **RICKY WAYNE JENKINS, a/k/a**

**"Scissorhands,"** stabbed a subordinate ABM member whom the ABM believed had disrespected the ABM enterprise.

r.      From in or about October 2013, through in or about November 2013,

**STEPHEN NEAL HUBANKS** issued at least one S.O.S. order and discussed the issuance of numerous other S.O.S orders to assault subordinate gang members whom the ABM believed had failed to perform sufficient "work" for the ABM enterprise.

s.      From in or about 2013, through in or about May, 2014, **STEPHEN NEAL HUBANKS**, and others known and unknown to the Grand Jury, smuggled Suboxone, a Schedule III controlled substance, in the prison system for the sale and benefit of the ABM enterprise.

t.      In or about 2013, ABM leaders sanctioned the stabbing of a subordinate gang member whom the ABM believed had violated ABM gang rules.

u.      On or about November 1, 2013, **PERRY WAYNE MASK** and

**STEPHEN NEAL HUBANKS** discussed the need to attack rival gang members whom the ABM believed had stolen property belonging to the ABM enterprise.

v.      From on or about November 12, 2013, through on or about November 15, 2013, **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** wired money to fellow ABM gang associates to facilitate the transportation of five pounds of methamphetamine from California to Mississippi for the benefit of the ABM enterprise.

w.      From at least on or about March 2013, and continuing until the date of this Indictment, **KATHY JUNE SHADBURN,** and others known and unknown to the Grand Jury,

17

smuggled cellular telephones and tobacco to imprisoned ABM gang members for sale within the prison system.

              x.     From on or about November 12, 2013, through on or about November 16, 2013, **KATHY JUNE SHADBURN** sent money to ABM associates to facilitate the transportation of five pounds of methamphetamine from California to Mississippi.

              y.     Beginning on a date unknown to the Grand Jury, but at least as of April 2013, and continuing to the date of this Indictment, **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine," KATHY JUNE SHADBURN**, and others known and unknown to the Grand Jury, facilitated communication of criminal activity regarding, among other things, movement of drug proceeds, among ABM gang members including those who were imprisoned.

              z.     On or about July 29, 2013, **DAVID LADRONE WILLIS, a/k/a "Leprechaun,"** and others known and unknown to the Grand Jury stole approximately eight firearms from Barry's Trading Post at the direction of an ABM superior.

              aa.     On or about July 31, 2013, **NATASHA BAXTER ELLIS, a/k/a "Tasha,"** and others known and unknown to the Grand Jury, stole approximately thirty-six firearms from The Pawn Shop at the direction of ABM superior, **PERRY WAYNE MASK.**

              bb.     From on or about July 29, 2013 through on or about August 3, 2013, **DAVID LADRONE WILLIS, a/k/a "Leprechaun," NATASHA BAXTER ELLIS, a/k/a "Tasha,"** and others known and unknown to the Grand Jury, sold stolen firearms at the direction of an ABM superior.

18

## COUNT TWO

### Conspiracy to Possess with Intent to Distribute Methamphetamine
[21 U.S.C. § 846]

9.      Beginning on an exact date unknown to the Grand Jury, but at least as of in or about January 2009, and continuing through the date of this Indictment, in the Northern District of Mississippi, and elsewhere, the defendants, **PERRY WAYNE MASK, STEPHEN NEAL HUBANKS, DAVID LADRONE WILLIS, a/k/a "Leprechaun," KATHY JUNE SHADBURN, NATASHA BAXTER ELLIS a/k/a "Tasha,"** and **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** and others known and unknown to the Grand Jury, did unlawfully, knowingly and willfully conspire and agree with each other, and with other persons both known and unknown to the grand jury, to distribute and possess with intent to distribute a controlled substance, to wit: 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

In violation of 21 U.S.C. § 846.

## COUNT THREE

Kidnapping of Michael James Hudson
[18 U.S.C. §§ 1959 (a) (1) and (2)]

10.     At all times relevant to this Indictment, the ABM as more fully described in

Paragraphs One through Six of this Indictment, which are re-alleged and incorporated by

reference as though fully set forth herein, constituted an enterprise as defined in Title 18, United

States Code, Section 1959(b)(2), namely the ABM, that is, a group of individuals associated in

fact, which was engaged in and the activities of which affected, interstate and foreign commerce.

The ABM constituted an ongoing enterprise whose members functioned as a continuing unit for

a common purpose of achieving the objectives of the enterprise.

11.     At all times relevant to this Indictment, the above-described enterprise, through its

members and associates, engaged in racketeering activity as defined in Title 18, United States

Code, Sections 1959(b)(1) and 1961(1), namely, acts involving drug trafficking in violation of

Title 21, United States Code, Sections 841 and 846 and acts involving money laundering in

violation of Title 18, United States Code, Section 1956.

12.     On or about December 2, 2010, in the Southern District of Mississippi and

elsewhere, the defendants, **FRANK GEORGE OWENS JR., a/k/a "State Raised," SONNY**

**TODD MAXWELL, a/k/a "Blue," JAMES MILTON DEAN, a/k/a "JD," WALTER**

**THOMAS BURRUS, a/k/a "T-bone,"** and others known and unknown to the grand jury, aiding

and abetting each other, for the purpose of maintaining and increasing position within the ABM,

an enterprise engaged in racketeering activity, kidnapped Michael James Hudson, in violation of

Mississippi Code Annotated, Section 97-3-53.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

20

## COUNT FOUR

Murder of Michael James Hudson
[18 U.S.C. §§ 1959(a)(1) & 2]

13.     Paragraphs Ten and Eleven of this Indictment are re-alleged and incorporated by reference as though set forth fully herein.

14.     On or about December 2, 2010, in the Southern District of Mississippi and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position within the ABM, an enterprise engaged in racketeering activity, the defendants, **FRANK GEORGE OWENS JR., a/k/a "State Raised," SONNY TODD MAXWELL, a/k/a "Blue," JAMES MILTON DEAN, a/k/a "JD," WALTER THOMAS BURRUS, a/k/a "T-bone,"** and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly and intentionally murder Michael James Hudson, in violation of Mississippi Code Annotated, Section 97-3-19(1)(a)-(b) and (2)(c).

In violation of 18 U.S.C. §§ 1959(a)(1) and (2).

21

## COUNT FIVE

<u>Kidnapping of D.W.</u>
[18 U.S.C. §1959(a)(1)]

15.     Paragraph Ten of this Indictment is re-alleged and incorporated by reference as though set forth fully herein.

16.     At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving drug trafficking in violation of Title 21, United States Code, Sections 841 and 846, acts involving money laundering in violation of Title 18, United States Code, Section 1956, acts involving kidnapping in violation of Mississippi Code Annotated, Section, 97-3-53, and acts involving murder in violation of Mississippi Code Annotated, Section 97-3-19.

17.     On or about October 8, 2011, in the Southern District of Mississippi and elsewhere, the defendant, **JOSEPH BRANDON CREEL, a/k/a "Oak,"** and others known and unknown to the Grand Jury, aiding and abetting each other, for the purpose of maintaining and increasing position within the ABM, an enterprise engaged in racketeering activity, kidnapped D.W., in violation of Mississippi Code Annotated, Section 97-3-53.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## COUNT SIX

### Assault of D.W.
[18 U.S.C. §§ 1959(a)(3) and 2]

18.     Paragraphs Ten and Sixteen of this Indictment are re-alleged and

incorporated by reference as though set forth fully herein.

19.     On or about October 8, 2011, in the Southern District of Mississippi and

elsewhere, for the purposes of maintaining and increasing position in the ABM, an enterprise

engaged in racketeering activity, the defendant, **JOSEPH BRANDON CREEL, a/k/a "Oak,"**

and others known and unknown to the Grand Jury, aiding and abetting each other, did assault

D.W., resulting in serious bodily injury, in violation of Mississippi Code Annotated, Section 97-

3-59.

In violation of 18 U.S.C. §§ 1959(a)(3) and 2.

23

## COUNT SEVEN

### Attempted Murder of J.B.
[18 U.S.C. §§ 1959(a)(5) and 2]

20.     Paragraphs Ten and Sixteen of this Indictment are re-alleged and

incorporated by reference as though set forth fully herein.

21.     On or about August 27, 2013, in the Northern District of Mississippi and

elsewhere, the defendants, **FRANK GEORGE OWENS, JR., a/k/a "State Raised," PERRY**

**WAYNE MASK, RICKY WAYNE JENKINS, a/k/a "Scissorhands,"** and others known and

unknown to the Grand Jury, aiding and abetting each other, for the purpose of maintaining and

increasing position within the ABM, an enterprise engaged in racketeering activity, did attempt

to murder J.B., in violation of Mississippi Code Annotated, Sections 97-3-19 and 97-1-7(2).

In violation of 18 U.S.C. §§ 1959(a)(5) and 2.

24

## COUNT EIGHT

Firearm Theft from a Licensed Firearms Dealer
[18 U.S.C. §§ 922(u) and 924]

22.     On or about July 31, 2013, in the Northern District of Mississippi, the

defendants, **PERRY WAYNE MASK**, and **NATASHA BAXTER ELLIS, a/k/a "Tasha,"**

aided and abetted by each other, and others known and unknown to the Grand Jury, knowingly

stole and unlawfully took and carried away from the premises and business inventory of The

Pawn Shop located in Coldwater, Mississippi, a business licensed to engage in the sale and

purchase of firearms, the following firearms, to wit:

1.      Howa, model 1500, 7mm caliber rifle, serial # B178028
2.      Charter Arms, model undercover 38, .38 caliber revolver, serial # 105239
3.      Winchester, model 94, 30-30 caliber rifle, serial# WC30734
4.      Mossberg, model 835, 12 gauge shotgun, serial# UM603489
5.      Savage, unknown model, .308 caliber rifle, serial# H356096
6.      Remington, model 742, .308 caliber rifle, serial # A7008293
7.      Winchester, model 1400, 12 gauge shotgun, serial # N618569
8.      Winchester, model 9422M XTR, .22 caliber rifle, serial # F555828
9.      Winchester, model 94, 30-30 caliber rifle, serial # 2579027
10.     Remington, unknown model, 20 gauge shotgun, serial #1104456
11.     Phoenix Arms, model HP22A, .22 caliber pistol, serial # 4249436
12.     Jimenez Arms, model J.A. 22, .22 caliber pistol, serial # 1149545
13.     Jimenez Arms, model J.A. 22, .22 caliber pistol, serial # 1135023
14.     Harrington & Richardson, model 733, .32 caliber revolver, serial # AXX148643
15.     Remington, model 710, 30-06 caliber rifle, serial # 71318611
16.     Smith & Wesson, unknown model, .44 caliber revolver, serial # 34385
17.     Hi Point, model C9, 9mm caliber pistol, serial # P104265
18.     Jimenez Arms, model J.A. .25, .25 caliber pistol, serial # 1135989
19.     Jimenez Arms, model J.A. .25, .25 caliber pistol, serial # 061177
20.     Jimenez Arms, model J.A. .25, .25 caliber pistol, serial # 061176
21.     Jimenez Arms, model J.A. .25, .25 caliber pistol, serial # 061178
22.     Ruger, model M77, .270 caliber rifle, serial # 771-66753
23.     Taurus, model R352, .38 caliber revolver, serial # CV24241
24.     Franchi, unknown model, 12 gauge shotgun, serial # 010767
25.     Mossberg, model 500, 20 gauge shotgun, serial # L669273
26.     Remington, model 742, .308 caliber rifle, serial # B6916226
27.     Mossberg, unknown model, 20 gauge shotgun, serial # 110729

28. Remington, model 870 Express, 12 gauge shotgun, serial # A068857M
29. Remington, model Sportsman, 16 gauge shotgun, serial # 1595531
30. Taurus, unknown model, .38 caliber revolver, serial # 1035999
31. Rossi, unknown model, 12 gauge shotgun, serial # SR374493
32. Remington, model 597, .22 caliber rifle, serial # A2797670
33. Remington, model 1100, 12 gauge shotgun, serial # L096305
34. Savage, unknown model, 20 gauge shotgun, serial # 1135023
35. Marlin, model 336W, 30-30 caliber rifle, serial # 96034426
36. Hermann Weihrauch, Model EA/R, .38 caliber revolver, S/N: 1557951

which firearms had previously been shipped and transported in interstate commerce.

In violation of 18 U.S.C. §§ 922(u) and 2.

## COUNT NINE

Theft of Firearms Stolen from a Licensed Firearms Dealer
[18 U.S.C. §§ 922(u) and 924]

23. On or about July 29, 2013, in the Northern District of Mississippi,

**PERRY WAYNE MASK** and **DAVID LADRONE WILLIS, a/k/a "Leprechaun,** aided and

abetted by each other and others known and unknown to the Grand Jury, knowingly stole and

unlawfully took and carried away from the premises and business inventory of Barry's Trading

Post located in Corinth, Mississippi, a business licensed to engage in the sale and purchase of

firearms, the following firearms, to wit:

1. Henry, model H002C, .22 caliber rifle, serial # U5007621C
2. Ruger, model 10/22, .22 caliber rifle, serial # 82479835
3. Ruger, model 10/22, .22 caliber rifle, serial # 82479953
4. Russian (Nagant), model 9130, 7.62x54 caliber rifle, serial # 9130325576
5. Smith & Wesson, model M&P15-22, .22 caliber rifle, serial #DZT2073
6. Colt, model M4, 5.56 / .223 caliber carbine, serial # LE161822
7. Taurus, model PT111 Millennium G2, 9mm caliber pistol, serial # TFX33366
8. Smith & Wesson, model 637-2, .38 caliber revolver, serial # CUD2130

which firearms had previously been shipped and transported in interstate commerce.

In violation of 18 U.S.C. §§ 922(u) and 2.

27

## COUNT TEN

Receipt / Possession of Stolen Firearms

[18 U.S.C. §§ 922(j) and 924]

24.     From on or about July 29, 2013 through on or about August 3, 2013, in the

Northern District of Mississippi, **GARY BRIAN LEE** and **WILLIAM ELLIS OVERTON,**

aided and abetted by each other and others known and unknown to the Grand Jury, received,

possessed, concealed, stored, and disposed of stolen firearms which had been shipped or

transported in interstate commerce, knowing or having reasonable cause to believe the firearms

had been stolen, including, but not limited to, the following firearms: Hermann Weihrauch,

Model EA/R, .38 caliber revolver, S/N: 1557951, Winchester, model 94, 30-30 caliber rifle,

serial # 2579027, Smith & Wesson, model M&P15-22, .22 caliber rifle, serial #DZT2073, and

others.

In violation of 18 U.S.C. §§ 922(j) and 2.

## FORFEITURE NOTICE

The allegations contained in Paragraphs One through Twenty-Four of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant Title 18, United States Code, Section 1963.

Pursuant to Title 18, United States Code, Section 1963, upon conviction of an offense in violation of Title 18, United States Code, Section 1962, the defendants, **FRANK GEORGE OWENS JR., a/k/a "State Raised," PERRY WAYNE MASK, STEPHEN NEAL HUBANKS, JOSEPH BRANDON CREEL, a/k/a "Oak," SONNY TODD MAXWELL, a/k/a "Blue," JAMES MILTON DEAN, a/k/a "JD," WALTER THOMAS BURRUS, a/k/a "T-bone," RICKY JENKINS, a/k/a "Scissorhands," DAVID LADRONE WILLIS, a/k/a "Leprechaun," KATHY JUNE SHADBURN, NATASHA BAXTER ELLIS, a/k/a "Tasha,"** and **RUTHIE GAIL RUTLEDGE, a/k/a "Goldmine,"** shall forfeit to the United States of America:

      a.      any interest acquired or maintained in violation of section 1962;

      b.      any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

29

c.     any property constituting, or derived from, any proceeds obtained, directly or
       indirectly, from racketeering activity or unlawful debt collection in violation of
       1962.

The United States will seek the entry of a money judgment, joint and several, in the event
specific property subject to forfeiture cannot be determined or located.

       If any of the property described above, as a result of any act or omission

of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without
       difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 18,
United States Code, Section 1963(m).

A TRUE BILL

UNITED STATES ATTORNEY

/s/ signature redacted
FOREPERSON

JAMES M. TRUSTY
CHIEF ORGANIZED CRIME AND GANG SECTION
UNITED STATES DEPARTMENT OF JUSTICE

31