IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.     CRIMINAL NO. 4:14CR141

FRANK OWENS, JR.
ERIC PARKER

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGEMENT OF ACQUITTAL AND/OR NEW TRIAL**

The United States, by and through Felicia C. Adams, United States Attorney for the Northern District of Mississippi, the Organized Crime and Gang Section of the Department of Justice, and the undersigned counsel submits this Response in Opposition to Eric Parker's Motion for a Judgment of Acquittal and/or new Trial and in support thereof would respectfully show the following:

**INTRODUCTION**

On or about October 23, 2014, a Federal grand jury returned an Indictment against fourteen (14) members and associates of the Aryan Brotherhood of Mississippi in the above-captioned case. On or about April 23, 2015, a Superseding Indictment was returned against the same fourteen (14) defendants, and charged three (3) additional members and associates of the Aryan Brotherhood of Mississippi (ABM). Fifteen (15) defendants were charged in Count One with a violation of Title 18, United States Code, Section 1962(d), racketeering conspiracy (hereinafter "RICO Conspiracy"). Eight (8) defendants were charged in Count Two with a violation of Title 21, United States Code, Section 846, conspiracy to distribute methamphetamine (hereinafter "Meth Conspiracy"). Five (5) defendants were charged in Count Three with a violation of Title 18,

1

United States Code, Section 1959(a)(1)&(2) VICAR kidnapping of Michael Hudson. Six (6) defendants were charged in Count Four with a violation of Title 18, United States Code, Section 1959(a)(1)&(2) VICAR Murder of Michael Hudson. Three (3) defendants were charged in Count Seven with a violation of Title 18, United States Code, Section 1959(a)(3) VICAR attempted murder of J.B.

Eric PARKER was charged in Count One (RICO Conspiracy); Count Two (Meth Conspiracy); and Count Four (VICAR Murder of Michael Hudson). Frankie OWENS was charged in Count One (RICO Conspiracy); Count Three (VICAR Kidnapping of Michael Hudson); Count Four (VICAR Murder of Michael Hudson); and Count Seven (VICAR Attempted Murder of J.B.). On April 4, 2016, both PARKER and OWENS proceeded to trial and on Wednesday, April 13, 2016, the jury returned guilty verdicts against PARKER and OWENS on all counts in which they were charged. At the close of the government's case in chief, PARKER moved the Court for a Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, which the Court properly denied. After the jury verdict, PARKER has now timely filed the present Motion, renewing his plea for a Judgment of Acquittal or in the alternative, asking the Court for a New Trial. PARKER'S Motion should be denied.

## SUMMARY OF FACTS

The transcript of the trial in this case is still being prepared as of the filing of this motion. Accordingly, the government offers the following general summary of the evidence offered during trial based on contemporaneous notes and the recollection of undersigned counsel.

The Aryan Brotherhood of Mississippi (hereinafter "ABM") was a state-wide criminal organization based inside the Mississippi State Prison System and having members both inside

2

prison and outside prison in the "free world." With roots in California that date back to the 1960s, the ABM was a functioning criminal organization at least as far back as the 1990s (Brandon Creel testified that he joined the ABM in 1993) and the ABM was clearly an ongoing criminal organization in 2009, the beginning date of the RICO Conspiracy charged in Count One.

The ABM had a written constitution that formed the basis of the ABM structure, rules of conduct and requirements for membership. The ABM was governed by a clear hierarchy with a three to four member "Wheel" functioning as the highest ranking leaders of the organization with defined levels of ranking positions below the Wheel. Members of the Wheel were also known as Spokes. The Wheel had ultimate authority over all ABM business throughout the entire State of Mississippi.

In 2009, Eric PARKER was a Captain in the Aryan Brotherhood. In addition to his "patch" or "brand" – the tattoo signifying general membership in the ABM – Brandon Creel issued PARKER his "bolts," an SS tattoo on his neck that signified his status as a "Thunder Warrior" in the ABM. Thunder Warriors are considered the elite by their fellow ABM members and must have completed one act of extreme violence or accomplished three confirmed missions on behalf of the ABM. According to numerous witnesses, in 2009 and 2010, Eric PARKER was a significant trafficker in methamphetamine. Brandon Creel testified that he and Eric PARKER distributed approximately ten (10) to twenty (20) pounds of methamphetamine from 2010 to 2012. PARKER often sold methamphetamine to other members of the ABM.

In August 2010, Duane O'Clare, a police officer in West Memphis, Arkansas, executed a traffic stop on Eric PARKER in West Memphis. Frankie OWENS was in the vehicle with PARKER in addition to a female passenger. PARKER admitted to O'Clare that he was in West

Memphis to buy pseudoephedrine in order to return to Mississippi and sell it to meth cooks. Pseudoephedrine is a base ingredient needed to cook methamphetamine.

In 2010, PARKER fronted methamphetamine to a fellow ABM member named Michael Hudson, a.k.a. "Skip." PARKER held a higher rank in the ABM than Hudson. Hudson did not pay for the methamphetamine, resulting in Hudson owing a drug debt to Eric PARKER, a ranking member of the ABM at the time. Brandon Creel, the highest ranking ABM member in the free world, ordered "minutes" (a fistfight) between PARKER and Michael Hudson to settle the drug debt between Hudson and PARKER. Hudson refused to show up for the ordered "minutes" with PARKER. Hudson's refusal to appear for his "minutes" was a violation of a direct ABM order. Because Hudson refused to follow the direct order of his ABM superior, he was subject to further discipline by the ABM.

At the time Hudson owed the drug debt to PARKER, Frankie OWENS, his co-defendant in this case, was also a Captain in the ABM, living near the Mississippi Gulf Coast with Mitchell Valentine. For failure to follow a direct order, OWENS ordered that Hudson be kidnapped and assaulted. OWENS directed fellow ABM member James Dean and prospect Sonny Maxwell to find Michael Hudson and bring him to Wendell Eaves' residence in Gautier, Mississippi.

On December 2, 2010, James Dean and Sonny Maxwell made contact with Hudson and met him under the guise of cooking methamphetamine. Following through with their ABM orders, Dean and Maxwell picked up Hudson in Maxwell's pick-up truck and drove him to Wendell Eaves' house in Gautier, Mississippi. Frankie OWENS, along with fellow ABM members Mitchell Valentine, Walter Burrus and Wendell Eaves, were already at Eaves' house.

Upon arrival at Eaves' house, OWENS, Valentine, Burrus, Dean, Eaves and Maxwell

4

proceeded to physically assault and severely beat Michael Hudson with OWENS striking Hudson in the head with a billie club he nicknamed "blackie." The beating was ordered by Frankie OWENS. After beating Hudson, they bound him with wire and put him in the trunk of Walter Burrus' vehicle. James Dean and Sonny Maxwell went back to Dean's house where Maxwell received his tattoo signifying membership in the ABM known as a "brand" or "patch." Maxwell earned his ABM brand for kidnapping and beating Michael Hudson. OWENS, Burrus and Valentine left Eaves' house in Burrus' vehicle and drove to Eric PARKER'S trailer with Hudson in the trunk.

During the ride to Eric PARKER'S trailer, OWENS shouted back and forth at Hudson who was screaming from inside the trunk. When they arrived at PARKER'S trailer, Hudson was still conscious and able to smoke a cigarette. PARKER arrived at his trailer a few minutes after OWENS, Burrus and Valentine. At that point, OWENS instructed Burrus and Valentine to leave PARKER'S trailer and return to Valentine's house.

Later that night, PARKER called Brandon Creel in a panic, telling him that things had gotten out of hand and that he needed help. Creel drove his motorcycle to PARKER'S trailer and met PARKER and OWENS. PARKER indicated that he needed help getting rid of a body. While Creel testified that he never saw the body, PARKER informed Creel that it was Michael Hudson, a.k.a. "Skip." Creel got one of PARKER'S neighbors to give him a ride back to Creel's house and OWENS and PARKER followed Creel with Michael Hudson's body in the back of a pick-up truck. Hudson's body was wrapped up in carpet and stuffed into a fifty-five gallon drum.

After they arrived at Creel's house, PARKER and OWENS attached a second fifty-five gallon drum over the drum that contained Hudson's body. OWENS and PARKER then

5

spray-painted the drums camouflage to look like a deer feeder. Creel then took the fifty-five gallon drums, containing the body of Michael Hudson, to a nearby piece of property owned by a friend. Creel used a back hoe to dig a hole, lined the hole with metal roofing material and filled the hole with tires and firewood. Creel placed the fifty-five gallon drums containing Hudson's body into the hole and covered it with gasoline. Creel set fire to the hole and checked the fire every day, adding gasoline and tires to keep the fire burning for four to five days. After burning Hudson's body for several days, Creel folded up the metal roofing material that contained the burned body. Creel then loaded it on his trailer and dumped it off a bridge into a river. After removing the metal roofing tin and the body, Creel sifted through the dirt that surrounded the burn site and dumped what was left into a creek behind his house.

After the beating, kidnapping and murder of Michael Hudson on December 2, 2010, Eric PARKER confessed to Brandon Creel that things got out of hand with Michael Hudson and that PARKER choked him to death with a bat. PARKER also confessed to his girlfriend, Jo Kalyn Henderson, that he strangled a man to death along with Frankie OWENS until he bled out of his eyes, ears, nose and mouth. Thomas Parker testified that Frankie OWENS confessed to him that he killed Michael Hudson and forced Eric PARKER to stab Michael Hudson in order to put blood on Eric PARKER'S hands.

The AT&T phone records for Michael Hudson's cellular phone number indicated that the last tower pinged by Hudson's cellular phone was less than a mile from Wendell Eaves' house. The last ping occurred on the evening of December 2, 2010.

On December 29, 2010, Eric PARKER was stopped in Navajo County, Arizona and interviewed by law enforcement officers. Danny Dees with the Navajo County Sheriff's

Department was present during the interview and testified as to how Eric PARKER identified himself as a member of the ABM and showed him his tattoos signifying his membership.

The ABM continued to operate throughout the State of Mississippi in 2011 and 2012. In 2013, Frankie OWENS had risen to the rank of Wheel member, or Spoke, along with Perry Mask and Barron Goff. In the Spring and Summer of 2013, the Drug Enforcement Administration ("DEA") in the Northern District of Mississippi became aware of the ABM's involvement in trafficking methamphetamine throughout Mississippi. During this same period of time, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") investigated the burglary of The Pawn Shop in Corinth, Mississippi and Berry's Trading Post in Coldwater, Mississippi, both Federal Licensed Firearms Dealers. These burglaries were orchestrated and carried out by members and associates of the ABM.

In August 2013, Ricky Jenkins, a.k.a. "Scissorhands," stabbed Jeremy Bailey numerous times in the Marshall County Correctional Facility pursuant to a direct order from Frankie OWENS. OWENS was only feet away from Bailey when he was stabbed and approved of his stabbing. The Jeremy Bailey stabbing was an act of ABM discipline carried out against Bailey.

In September 2013, law enforcement officials in the Southern District of Mississippi seized approximately twenty (20) pounds of methamphetamine from Michael McLemore, a.k.a. "Dog." McLemore was a primary source of methamphetamine for Perry Mask and the ABM and supplied the ABM with methamphetamine on numerous occasions.

Later in September 2013, ABM member William Charles Carroll, a.k.a. "CC" led the Mississippi Highway Patrol on a high speed chase ending in a vehicle crash and an overnight stand-off. Methamphetamine was recovered from Carroll's vehicle. Both Perry Mask and Terry

Kelly testified that a portion of the methamphetamine seized from Carroll's vehicle belonged to Frankie OWENS. Steven Hubanks and Perry Mask both testified that they spoke to Carroll on the phone during the high-speed chase and Terry Kelly testified that OWENS told him that he spoke to Carroll during the high-speed chase.

In October of 2013, the DEA and ATF obtained a Court authorized wire and electronic intercept of Perry Mask's cellular phone number. Mask was a Spoke in the ABM at the time and the wiretap intercepted numerous phone calls, including calls with Frankie OWENS, discussing ABM business, meth trafficking and acts of violence. Multiple calls were played for the jury during trial.

In November 2013, near the conclusion of the active wiretap, Timothy Deshazier, a.k.a. "Tennessee" travelled to California on behalf of Perry Mask and the ABM and purchased approximately five pounds of methamphetamine. While he was returning to Mississippi, the Arkansas State Police, under the direction of the DEA and based on Perry Mask's intercepted communications, stopped Deshazier and searched his mini-van. Law enforcement officials seized approximately five pounds of methamphetamine from Deshazier's mini-van, exactly as described in the intercepted communications.

After evaluating the evidence presented in the trial of this case, the jury found both PARKER and OWENS guilty on all counts in which they were charged. The evidence supported the jury's verdict and the verdict must stand.

**ARGUMENT**

Rule 29 of the Federal Rules of Criminal Procedure provides "the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to

sustain a conviction." Fed. R. Evid. 29. The Court must decide "whether the relevant evidence, viewed in a light most favorable to the government, could be accepted by a jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Hanson*, 161 F.3d 896, 900 (5th Cir. 1998) (quoting *United States v. Mulderig*, 120 F.3d 534, 550 (5th Cir. 1997)). "The evidence need not 'exclude every reasonable hypothesis of innocence or be wholly consistent with every conclusion except that of guilt…A jury is free to choose among reasonable constructions of the evidence." *Id*. A trial court does not have the discretion to weigh the evidence or assess the credibility of witnesses in the consideration of a motion for judgment of acquittal. *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997); *citing Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). "When reviewing the sufficiency of the evidence for the purposes of a motion for acquittal, our task is merely to 'determine whether ... a rational jury could have found the essential elements of the offense beyond a reasonable doubt. We are concerned only with whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence.'" *United States v. Romos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008) (quoting *United States v. Frye*, 489 F.3d 201, 207 (5th Cir.2007)); *see also United States v. Ollison*, 555 F.3d 152, 160 (5th Cir. 2009) ("our inquiry is limited to whether the jury's verdict was reasonable, not whether we believe it to be correct.") (internal quotations omitted). "If, however, 'the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilty and a theory of innocence, the conviction should be reversed.'" *Ollison*, 555 F.3d at 158 (quoting *United States v. Mackay*, 33 F.3d 489, 493 (5th Cir. 1994)).

"The power to grant a new trial…should be invoked only in *exceptional cases* in which the

9

evidence preponderates heavily against the verdict." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (emphasis added). "The court may not re-weigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Robertson*, 110 F.3d at 1116-17. "The evidence must preponderate *heavily against the verdict*, such that it would be a miscarriage of justice to let the verdict stand." *Id*. (emphasis added). The Fifth Circuit reviews the District Court's decision only for a "clear abuse of discretion." *Id.*

The evidence presented to the jury in this case, viewed in the light most favorable to the verdict, clearly supports the jury's finding Eric PARKER guilty on all Counts. Accordingly, PARKER's renewed Motion for Judgment of Acquittal and in the alternative, Motion for New Trial, should be denied.

### I. The Evidence Supported the Jury's Finding by a Preponderance of the Evidence that Venue was Proper as to Counts One, Two and Four

Counts One, Two, and Four of the Indictment each allege continuing offenses and thus venue can be found in any district in which the crime began, continued, or was completed. All three counts in which the defendant is charged have material actions constituting the beginning, continuation, and completion of the charged offenses which occurred in the Northern District of Mississippi.

The Sixth Amendment requires, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const., amend. VI. These constitutional principles are embodied in Rule 18 of the Federal Rules of Criminal Procedure, which provides that "[u]nless a statute or these rules permit otherwise, the government must

prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

The Supreme Court ruled that the place where a crime is deemed to have occurred, or the *locus delicti*, "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales,* 524 U.S. 1, 5 (1998) (citation omitted). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriquez-Moreno*, 526 U.S. 275, 279 (1999). Moreover, the principal venue statute, 18 U.S.C. § 3237(a), provides as follows:

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

### a. Venue was Proper as to the Conspiracies Charged in Counts One and Two

Pursuant to 18 U.S.C. § 3237(a), the RICO Conspiracy charged in Count One and the Meth Conspiracy charged in Count Two are "continuing offense(s)," and hence may be brought "in any district in which such offense was begun, continued, or completed." Thus, the prosecution of both Count One and Two may be brought in any district where some of the enterprise's criminal activity occurred. *See United States v. Nieto*, 721 F.3d 357 (5th Cir. 2013) (venue was proper, even though drug purchases alleged in support of conspiracy conviction occurred in another district within the state); *see also United States v. Taverez-Levario*, 788 F.3d 433, 439(5th Cir. 2015) (the protypical continuing offense is conspiracy); *United States v. Thomas*, 690 F.3d 358, 369 (5th Cir. 2012) ("In cases involving conspiracy offenses, venue is proper in any district where the agreement was formed or an overt act occurred. Venue can be based on evidence of any single act

11

that initiated, perpetuated, or completed the crime.")  Venue is proper in this case even if Eric PARKER never set foot in the Northern District of Mississippi.  *See United States v. Acosta*, 763 F.2d 671, 681 (5th Cir. 1985); *United States v. Garcia Abrego*, 141 F.3d 142, 154 (5th Cir. 1998).

Some conspiracy statutes, including the RICO conspiracy provision, do not require proof of an overt act for conviction. See 18 U.S.C. § 1962(d); *Salinas v. United States*, 522 U.S. 52, 63 (1997). Nevertheless, "venue is proper in any district in which an overt act in furtherance of the conspiracy was committed, even where an overt act is not a required element of the conspiracy offense." *Whitfield v. United States*, 543 U.S. 209, 218 (2005).

In this case, PARKER was charged with conspiracy to violate RICO. Although proof of an overt act is not required to convict PARKER of the RICO conspiracy, the government alleged thirty-one (31) overt acts committed in furtherance of the conspiracy. The Indictment alleges some of those overt acts were committed in the Northern District of Mississippi and the government offered evidence at trial of numerous overt acts that were committed in the Northern District of Mississippi.  While the defendant argues that he never participated in any overt act in the Northern District of Mississippi, his argument fails to recognize the expansiveness of venue in conspiracy cases. As the Supreme Court reaffirmed in *Whitfield*, a conspiracy prosecution can be brought in <u>any</u> district where <u>any</u> of the co-conspirators committed <u>any</u> overt act. Because the government offered evidence that PARKER'S co-conspirators committed numerous overt acts in the Northern District of Mississippi, venue is proper for all the defendants, including PARKER, regardless of the fact that PARKER may have never committed an overt act here in the District.

The attempted murder of Jeremy Bailey, numerous acts of meth trafficking, the burglary of the Pawn Shop and Berry's Trading Post, every phone call made from inside the Mississippi State

Prison facilities in Parchman, Marshall County and Alcorn County, among others, all represent overt acts proven by the government at trial that establish proper venue in the Northern District of Mississippi. Each overt act was intertwined in the conspiracy to participate in the criminal activities of the ABM, a state-wide organization covering all of Mississippi. Venue is proper for the conspiracies charged in Count One and Count Two and PARKER'S motion should be denied.

### b. Venue is Proper for the VICAR Murder Charged in Count Four

The existence of an enterprise is an essential element of a Section 1959 offense. Courts have held that a Section 1959 violation constitutes a "continuing offense" *See e.g., United States v. Saavedra*, 223 F.3d 85, 91-91 (2d Cir. 2000); *United States v. Williams*, 181 F. Supp. 2d 267, 290-292 (S.D.N.Y. 2001); *United States v. Aiken*, 76 F. Supp. 2d 1346, 1349-51 (S.D. Fla. 1999). An association-in-fact enterprise is proven "by evidence of an ongoing organization that may be formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, at 583. Thus the enterprise element of Section 1959 offense necessarily requires some degree of continuing or ongoing activity, which triggers application of 18 U.S.C. § 3237(a). The ABM constituted the enterprise, and the government proved at trial that PARKER aided and abetted in the murder of Michael Hudson for the purpose of gaining entrance to, maintaining, or increasing his position in the ABM. This prosecution is therefore properly brought in any district where the enterprise conducted its affairs, including the Northern District of Mississippi. *See Aiken*, 76 F. Supp.2d at 1350 (rejecting argument that because the VICAR murder charged under 18 U.S.C. § 1951 did not occur in the charging district, venue was improper and holding that "[a]ny venue appropriate for a prosecution of a continuing offense under RICO would be similarly appropriate for such a continuous offense under

13

1959").

PARKER is charged in Count Four with aiding and abetting the murder of Michael Hudson. The principles of venue as it relates to conspiracy, also apply to aiding and abetting: "As with conspirators, whether an aider and abettor has ever before been in the district of the trial is not necessarily determinative of proper venue. Aiding and abetting crimes may be tried in the district where the principal committed the substantive crimes." *United States v. Winship*, 724 F.2d 1116, at 1124-1125 (5th Cir. 1984).

Contrary to the defendant's repeated claims, the government is simply not required to prove that Eric PARKER committed an overt act in Northern District of Mississippi related to the murder of Michael Hudson. The government must prove that PARKER'S involvement in the murder of Michael Hudson was for the purpose of gaining entrance to, maintaining, or increasing his position in the ABM and that the ABM's criminal activities stretched into the Northern District of Mississippi. The murder of Michael Hudson was a direct result of him refusing an ABM order to engage in "minutes" or fight with Eric PARKER. Sonny Maxwell received his ABM brand for kidnapping and beating Hudson on the night of the murder. The murder of Michael Hudson was an act of ABM discipline carried out by ranking ABM members, Eric PARKER and Frankie OWENS. The murder was directly related to PARKER'S membership and rank in the ABM and the ABM's criminal activities spanned the entire State of Mississippi. Accordingly, the Court had proper venue over the VICAR murder charged in Count Four.

## II. Evidence of the ABM RICO Conspiracy was Properly Admitted Against PARKER

PARKER raises a number of objections to the government's evidence pursuant to Rule 403

14

of the Federal Rules of Criminal Procedure ("Rule 403"). Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Court's rulings regarding Rule 403 are reviewed for an abuse of discretion "with an especially high level of deference to the district court." *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008); *United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015). The objections in PARKER'S motion appear to center around his argument that any evidence of criminal activity in which he was not directly and personally involved should have been inadmissible as irrelevant and more prejudicial than probative under Rule 403. PARKER is mistaken and his Motion should be denied.

"Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how [the defendant] became a member." *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009); *see also United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985).

The essence and object of RICO conspiracy, as charged in Count One of the Superseding Indictment, is the agreement to violate the RICO statute – that is, the agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity or collection of unlawful debt. *See Salinas v. United States*, 522 U.S. 52, 63-66 (1997).

The term "enterprise" under RICO includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "association-in-fact" enterprise (i.e., an enterprise

15

composed of a group of individuals rather than a legal entity such as a corporation) "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 at 583; *see also United States v. Cauble*, 706 F.2d 1322, 1340 (5th Cir. 1983).

A RICO enterprise "is an entity separate and apart from the pattern of racketeering activity in which it engages." *Turkette*, 452 U.S. at 583. To secure a RICO conviction, the government "must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity' . . . while proof used to establish these elements may coalesce, proof of one does not necessarily establish the other." *Turkette*, 452 U.S. 576 at 583.

PARKER alleges, without any specific explanation, that the Court erred in admitting evidence of the ABM's meth trafficking activity in the Northern District of Mississippi; the burglaries of gun stores in the Northern District of Mississippi; the intercepted phone calls from the 2013 wiretap; the William Carroll high speed chase and meth seizure; and the twenty-pound meth seizure from Michael McLemore. Each of these items of evidence is directly related to the ABM criminal enterprise and the government's proof that the ABM was a criminal enterprise engaged in a pattern of racketeering activity. The evidence was properly admitted given the broad scope of the RICO Conspiracy and did not violate Rule 403. PARKER'S Motion for Judgment of Acquittal and/or New Trial should be denied.

### III.     The Court Properly Admitted Statements of Co-Conspirators into Evidence

PARKER makes a blanket objection to "copious amounts of hearsay statements by alleged co-conspirators." The statements of co-conspirators offered into evidence, typically in the form of admissions by Frankie OWENS, were not hearsay and were properly admitted by the Court.

According to Rule 801(d)(2)(E) of the Federal Rules of Evidence, a statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy." Rule 801(d)(2)(A) also provides that a statement is not hearsay if it is an admission made by an opposing party that is offered as evidence against that opposing party.

In order for evidence to be admissible under Rule 801(d)(2)(E) as non-hearsay, the government must establish "(1) the existence of a conspiracy, (2) [that] the statement was made by a co-conspirator of the party, (3) [that] the statement was made during the course of the conspiracy, and (4) [that] the statement was made in furtherance of the conspiracy." *United States v. Robinson*, 367 F.3d 278, 291–92 (5th Cir.2004) (quoting *United States v. Solis*, 299 F.3d 420, 443 (5th Cir.2002)).

As explained *supra*, the conspiracy in Count One is a conspiracy to engage in racketeering activity: the ABM criminal enterprise. Accordingly, any statements made by ABM members in furtherance of the criminal activity of the ABM enterprise are not hearsay and are admissible against PARKER. For example, statements made by OWENS to Thomas Parker are admissible as admissions by a party opponent under Rule 801(d)(2)(A) and as co-conspirator statements under Rule 801(d)(2)(E). The government offered ample evidence to show PARKER and OWENS were co-conspirators in the RICO conspiracy. Likewise, the recorded phone calls admitted into evidence were not hearsay as they were statements made by co-conspirators in furtherance of the ABM RICO conspiracy. As the Court correctly found at the conclusion of the government's case in chief, the government proved the existence of a conspiracy involving PARKER and offered statements by PARKER'S co-conspirators during the course of the conspiracy and in furtherance of the conspiracy. Any statements made by OWENS or

17

PARKER'S other co-conspirators were not hearsay and were properly admitted against PARKER.[1]

### IV. The Evidence Clearly Supports the Jury's Guilty Verdict as to Count One, Count Two and Count Four

Viewing the evidence in the light most favorable to the verdict, the evidence presented in this case clearly supports the jury's finding that Eric PARKER is guilty of the RICO Conspiracy charged in Count One, the Meth Conspiracy charged in Count Two and the VICAR Murder charged in Count Four. The evidence showed that PARKER was a Captain in the ABM, heavily involved in meth trafficking with other members of the ABM, including Brandon Creel. PARKER, aided and abetted by Frankie OWENS, murdered Michael Hudson after he failed to repay a drug debt and disobeyed a direct ABM order to have "minutes" with Eric PARKER. PARKER directly participated in the criminal activities of the ABM and the ABM spanned the entire State of Mississippi throughout the timeframe charged in the Superseding Indictment. The evidence supported the jury's guilty verdict as to all Counts and the jury verdict must stand.

### V. The Court Properly Denied PARKER'S Proposed Jury Instructions and Pre-Trial Motions

PARKER alleges in his motion, without explanation or argument, that the Court erred in

---

[1] PARKER also argues that the Court should apply the principles of *Crawford v. Washington*, 541 U.S. 36, 61 (2004) and the Confrontation Clause to non-hearsay co-conspirator statements. However, *Crawford* does not apply to statements that are not testimonial. *See e.g. United States v. Polidore*, 690 F.3d 705, 710 (5th Cir. 2012) ("the [Confrontation] Clause's reach is limited to testimonial statements."). "Statements made between co-conspirators in furtherance of a conspiracy are not testimonial." *United States v. Alaniz*, 726 F.3d 586, 608 (5th Cir.2013). Likewise, the intercepted phone conversations between co-conspirators were not testimonial. *See e.g.,United States v. Morgan*, 748 F.3d 1024, 1038-39 (10th Cir. 2014). The non-hearsay statements of PARKER'S co-conspirators admitted into evidence in this case were not testimonial and *Crawford* has absolutely no application to these statements.

18

refusing all of his proposed jury instructions. PARKER also alleges that the Court erred in granting the government's motion to present the jury with evidence of PARKER'S tattoos and in denying PARKER'S Motion for Severance and Motion for a Psychological Evaluation. The Court properly refused PARKER'S proposed jury instructions for the reasons provided by the Court on the record during the jury instruction conference. In addition, as the Court explained in its written orders and opinions, the Court properly granted the government's motion to present the jury with photos of PARKER'S tattoos and properly denied the Motion to Sever and the Motion for Psychological Evaluation.

## CONCLUSION

For the foregoing reasons, the defendant Eric PARKER'S Motion for Judgment of Acquittal or in the alternative a New Trial should be denied.

DATED this the 9th day of May, 2016

        Respectfully submitted,

        FELICIA C. ADAMS
        United States Attorney
        MS Bar No. 1049

By:   */s/ Clayton A. Dabbs*
        CLAYTON A. DABBS
        Assistant United States Attorney
        Mississippi Bar No. 101537
        900 Jefferson Avenue
        Oxford, MS   38655
        Telephone: (662) 234-3351
        Fax: (662) 234-0657

## **CERTIFICATE OF SERVICE**

I, Clayton A. Dabbs, Assistant United States Attorney for the Northern District of Mississippi, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to:

> William Andy Sumrall, Esq.
> Counsel for Frank George Owens, Jr.
> sumrallaw@gmail.com
>
> Joshua Turner, Esq.
> Counsel for Eric Glenn Parker
> oxfordlawyer@gmail.com

This the 9th day of May, 2016

> */s/ Clayton A. Dabbs*
> CLAYTON A. DABBS
> Assistant United States Attorney